BLACK, Circuit Judge,
specially concurring:
I join the result reached by the majority decision. I write separately because I do not believe Rosenberger v. Rector & Visitors of the University of Virginia, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) and Lamb’s Chapel v. Center Moriches Union Free School District, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) are as readily distinguishable from the present case as the majority. I think these cases compel us to conclude that this was an instance of viewpoint-based discrimination, not content-based discrimination. A finding of viewpoint discrimination, however, does not change the result in this case because Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), allows for viewpoint-based discrimination against school-sponsored student expression.
In' Hazelwood, the Supreme Court addressed the First Amendment implications of a high school principal’s excision of two pages worth of articles from a high school newspaper. In that case, a high school journalism class wrote and edited a sehool newspaper called Spectrum: Hazelwood, 484 U.S. at 262, 108 S.Ct. at 565. In one issue of the paper, two articles were scheduled to appear discussing student pregnancy and the impact of divorce on students. Id. at 263,108 S:Ct. at 565-66. The principal objected to the publication of the articles because he believed, inter alia, that the material was- not suitable for younger students. Id. at 263, 108 S.Ct.' at 566. Accordingly, the principal cut.the entire two pages on which these articles appeared. Id. at 263-64, 108 S.Ct. at 566.
The Supreme Court held the school was not required to promote affirmatively this particular school-sponsored student expression. It explained the school’s decision was reasonably related to the legitimate pedagogical concern, among other things, of preventing the distribution of “frank talk” about girls’ “sexual histories and their use or nonuse of birth control .... in a school-sponsored publication distributed to 14-year-old freshmen and presumably taken home to be read by students’ even younger brothers and sisters.” Id. at 274-75, 108 S.Ct. at 572. In reaching this conclusion, however, unlike the *1218 approach of typical nonpublic forum cases such as Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), the Supreme Court did not clarify whether schools could make this decision solely on the basis of the student expression’s subject matter, or also on the basis of the student expression’s viewpoint.
In Searcey v. Harris, 888 F.2d 1314 (11th Cir.1989), we examined whether Ha-zelwood permitted viewpoint-based discrimination in the context of school-sponsored non-student expression. There, the school refused to let a nonstudent group speak at the school’s career day. Id. at 1315. We concluded the school’s actions did not run afoul of Hazelwood and stated that “[without more explicit direction, we will continue to require school officials to make decisions relating to speech which are viewpoint neutral.” Id. at 1325.
Appellant, therefore, contends Searcey dictates that Hazelwood proscribes censorship of school-sponsored student expression on the basis of viewpoint. I disagree. On the contrary, Searcey does not control the instant situation because it did not involve school-sponsored student expression. Instead, Searcey involved a non-student outside group that wanted to speak at a school function. As such, Sear-cey merely stands for the proposition that when a school has opened itself to outside speakers for some school-sponsored function, such as career day, it may not discriminate against the outside speakers’ viewpoints. I am compelled to distinguish Searcey and conclude Hazelwood permits viewpoint-based discrimination against school-sponsored student expression for three reasons.
First, language in the Hazelwood opinion itself suggests schools may censor school-sponsored student expression on the basis of its viewpoint:
A school must also retain the authority to refuse to sponsor student speech that might unreasonably be perceived to advocate drug or alcohol use, irresponsible sex, or conduct otherwise inconsistent with the shared values of a civilized social order, or to associate the school with any position other than neutrality on matters of political controversy.
Hazelwood, 484 U.S. at 271, 108 S.Ct. at 570 (emphasis added; citations and internal quotation marks omitted). This language suggests schools may promote school-sponsored student expression that advocates certain views, while simultaneously censoring school-sponsored student expression that advocates contrary views. This is the epitome of discrimination based on viewpoint. We did not deal with student expression in Searcey; therefore we had no reason to address this Hazelwood language.
Second, despite Hazelwood’s silence on viewpoint neutrality, the majority of our sister circuits to consider the question have held Hazelwood permits viewpoint-based discrimination. The First and Tenth Circuits have held Hazelwood permits viewpoint discrimination. Fleming v. Jefferson County Sch. Dist. R-1, 298 F.3d 918, 928 (10th Cir.2002), cert. denied, 537 U.S. 1110, 123 S.Ct. 893, 154 L.Ed.2d 783 (2003); Ward v. Hickey, 996 F.2d 448, 453-54 (1st Cir.1993). Only the Ninth Circuit has concluded Hazelwood does not permit viewpoint discrimination. See Planned Parenthood of S. Nev., Inc. v. Clark County Sch. Dist., 941 F.2d 817, 829 (9th Cir.1991) (en banc) (analyzing whether a censorship was viewpoint neutral, without first explaining whether Hazel-wood requires viewpoint neutrality).
The majority rule of the First and Tenth Circuits better addresses the special situation of public schools by giving educators discretion to discriminate against school- *1219 sponsored student expression on the basis of viewpoint. As the Tenth Circuit explained, the Hazelwood Court’s “specific reasons supporting greater control over school-sponsored speech, such as determining the appropriateness of the message, the sensitivity of .the issue, and with which messages a school chooses to associate itself, often will turn on viewpoint-based judgments.” Fleming, 298 F.3d at 928. “No doubt the school could promote student speech advocating against[1] drug use, without being obligated to sponsor speech with the opposing viewpoint. Ha-zelwood entrusts to educators these decisions that require judgments based on viewpoint.” Id.' -I agree. If viewpoint discrimination- were forbidden, then a school that allowed a mural to say “God loves you. What part of thóu shalt didn’t you understand? God” might also have to allow a mural to say “Your God is dead. Long live Beelzebub.” This would be an absurd result. ,
In contrast, the minority approach of the Ninth Circuit is not persuasive because it never explained why Hazelwood proscribes viewpoint-based discrimination. Indeed, a Ninth Circuit panel recently criticized the Planned Parenthood decision because, “[djespite the absence of express ‘viewpoint neutrality’ discussion anywhere in Hazelwood, the Planned Parenthood court incorporated ‘viewpoint neutrality’ analysis into nonpublic forum, school-sponsored speech cases in our Circuit.” Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1010 (9th Cir.2000).
• Third, as a policy matter, unlike other school-sponsored expression, school authorities need more discretion to control school-sponsored student speakers. Schools must not be “unduly constrained from fulfilling their role as a principal instrument in awakening.the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment.” Hazelwood, 484 U.S. at 272, 108 S.Ct. at 570 (citation and internal quotation marks omitted). Additionally, in the long run, this approach will promote more school-sponsored expression by giving school administrators more control over the viewpoint of such expression.[1] See id. at 276 n. 9, 108 S.Ct. at 572 n. 9 (suggesting that, if administrators were not given such control, schools would tend to silence all school-sponsored expression rather than allow uncontrolled school-sponsored expression); Fleming, 298 F.3d at 934 (“When posed with such a choice, schools may very well elect to not sponsor speech at all, thereby limiting speech instead of increasing it.”). If schools cannot control the viewpoint of the student expression they sponsor, there will likely be fewer school-sponsored student publications, student theatrical productions, student concerts, student speeches, or other expressive activities for students.
For these reasons, I conclude Hazel-wood . permits schools to discriminate against school-sponsored student expression on the basis of viewpoint.
*1220 A school’s censorship of school-sponsored student expression survives review under Hazelwood if it is reasonably related to legitimate pedagogical concerns. 484 U.S. at 273, 108 S.Ct. at 571. Here, the district court correctly held Appellees had a legitimate pedagogical concern in avoiding disruption to the learning environment from religious debate erupting on school walls. Fleming, 298 F.3d at 934. I believe Appellees’ policy in prohibiting religious expression on its walls was reasonably related to this legitimate pedagogical concern.[2]
CONCLUSION
Sharah’s murals were school-sponsored expression in a nonpublic forum subject to restriction under Hazelwood — the murals were painted as part of a curricular activity and the public, as well as teachers and students, could have reasonably believed the murals bore the imprimatur of the school. Although Appellees censored Sha-rah’s school-sponsored murals on the basis of their religious viewpoint, Hazelwood permits such viewpoint discrimination so long as the school’s actions are reasonably related to legitimate pedagogical concerns. Here, the school’s request that Sharah paint over certain parts of her murals was reasonably related to the school’s interest in avoiding disruption to the learning environment caused by the reaction to the murals. Therefore, I conclude that the school’s viewpoint-based discrimination, not content-based, was permissible under Hazelwood.

. I caution, however, that when a school discriminates against expression on the basis of its viewpoint, it runs a greater risk of having its policy struck down for its failure to be reasonably related to legitimate pedagogical concerns. See Samuel P. Jordan, Note, Viewpoint Restrictions and School-Sponsored Student Speech: Avenues for Heightened Protection, 70 U. Chi. L.Rev. 1555, 1573 (2003) (explaining schools should not allow viewpoint discrimination against school-sponsored expression to be justified "with just any pedagogical purpose”). For example, I would be hard pressed to find a school policy was reasonably related to any legitimate pedagogical concern if it sponsored student expression in favor of Republicans, but did not permit school-sponsored student expression in favor of Democrats, or vice-versa.

. Given my conclusion, there is no need for me to address Appellees' alternative argument that they had a legitimate pedagogical concern in avoiding an Establishment Clause violation.