FORTUNATO P. BENAVIDES, Circuit Judge,
specially concurring:
I concur in the decision and write separately only to further elaborate on the complex and unsettled aspects of this area of the law. The First Amendment circumscribes a school’s authority to restrict the speech of non-student visitors to campus. The constitutional extent of that authority varies with the use of the facility. First, where a school facility is opened as a general public forum, any regulation is subject to strict scrutiny, and only narrowly tailored time, place, and manner restrictions are permissible. Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Second, a school serving only as a limited public forum need not “allow persons to engage in every type of speech,” and officials may restrict use to “certain groups or [to] the discussion of certain topics” provided that restrictions are viewpoint-neutral. Good News Club v. Milford Cent. Sch, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (citation omitted). And finally, where a school is not opened as a public forum at all, but is simply operating as a school, officials enjoy the “inherent” authority to limit an outsider’s access and expression to that which is “compatible with the intended purpose of the property.” Perry, 460 U.S. at 49, 103 S.Ct. 948.
Complicating this seemingly straightforward framework are the requirements of the Establishment Clause. A government entity must remain neutral toward religion. Good News, 533 U.S. at 114, 121 S.Ct. 2093. Any restriction on religious expression must have a “seetilar ... purpose,” and should not inhibit religious practice or “foster an excessive government entanglement with religion.” Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (citation and internal quotation marks omitted). Accordingly, public school officials must “accommodate the free exercise of religion” without appearing to “endorse one religion over another, or to endorse religion in general.” Lee v. Weisman, 505 U.S. 577, 585, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (citation omitted). At the same time, any regulation intended to prevent apparent endorsement must not be so onerous that the school seems hostile toward religion or religious individuals. Lynch v. Donnelly, 465 U.S. 668, 673, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).
Because the extent of a school’s authority to restrict speech is a function of so many complex variables, any countervailing right is rarely considered “clearly established” for the purposes of qualified immunity analysis. See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir.2011) (en banc). Morgan argues that his right to distribute religious material is clearly established because “regardless of forum, viewpoint discrimination regarding private speech is unconstitutional.” This observation is generally true, but is too broad to provide an official with fair notice of any particular right at risk of being violated. See Camreta v. Greene, 563 U.S. ——, 131 S.Ct. 2020, 2031, 179 L.Ed.2d 1118 (2011). And even assuming that some kind of universal prohibition against viewpoint discrimination could serve as a rule for the purposes of qualified immunity, that broad proposition is not clearly established in the context of the public schools. In fact, the Supreme Court endorsed a policy akin to viewpoint discrimination when it allowed a school district to forbid certain teachers’ unions from accessing teacher mailboxes. Perry, 460 U.S. at 50, 103 S.Ct. 948. Although the majority declined to label this differential treatment as viewpoint discrimination per se, it acknowledged a *763 school’s inherent “right to make distinctions in access on the basis of subject matter and speaker identity.” Id. at 49, 103 S.Ct. 948. “While these distinctions may be impermissible in a public forum,” they are “inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.”[1] Here, it is unclear whether any sort of differential or discriminatory treatment occurred. Assuming so, and to the extent that it did, school officials may have simply concluded that in-class religious canvassing among adults is not compatible with a third-grade classroom activity.
Moreover, some courts have affirmatively held that the Constitution permits a certain degree of viewpoint discrimination in the schools. The First and Tenth Circuits have held that viewpoint discrimination may be permissible in the context of school-sponsored speech.[2] Another court expressly endorsed restrictions on the use of religious materials in the classroom.[3] And the Supreme Court itself has acknowledged that “it is not clear” whether the need to “avoid[ ] an Establishment Clause violation would justify viewpoint discrimination.” Good News, 533 U.S. at 113, 121 S.Ct. 2093. We need not determine today how these precedents might inform or influence the resolution of the constitutional issues raised by Morgan. However, the fact that the nation’s highest Court has conceded the lack of clarity renders suspect any claims that the law is clearly established.
Morgan relies on two cases, Chiu and Good Netos, as evidence of his right to distribute religious material to other adults. See generally id.; Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330 (5th Cir.2001). For the reasons stated in our decision today, Chiu does not establish the asserted right. Good News is also inappo-site. If anything, Good News only underscores the extent to which Morgan fails to identify any authority that clearly establishes the asserted right. In that case the Supreme Court held that a school district cannot restrict access to a limited public forum on the basis of viewpoint. 533 U.S. at 106, 121 S.Ct. 2093. In its extended discussion of relevant authority, the Court considered several precedents, finding each one distinguishable on one ground or another. Id. at 114-117, 121 S.Ct. 2093. Indeed, a First Amendment precedent may be rendered inapposite by any number of factual distinctions, including the speaker, the subject, the venue, and the timing. These factual differences give rise to legal distinctions that affect the outcome of a case. Consequently, a precedent will only provide fair notice to an official if it is analogous in nearly every respect to the dispute being adjudicated. Yet Morgan does not point to any remotely analogous case that existed at the time of Swanson’s actions. Nor am I aware of such a case.
The intersection of the First Amendment and the public school classroom presents unusually difficult questions of law, even for the judiciary. The Constitution *764 zealously safeguards the individual right to practice religion, yet it precludes any religious expression that might be seen as emblematic of the state. In light of this tension, it seems unrealistic to expect that an educator might somehow divine her constitutional obligations without any authority on point.
Two years ago this Court held that— notwithstanding the vast body of law addressing the First Amendment rights of students — the contours of the rights were not sufficiently clear to provide Swanson fair notice of her constitutional obligations with respect to the student gift exchange. Morgan, 659 F.3d at 382. Given the wholesale absence of authority addressing the rights of adults in the classroom, the contours of those rights are even less distinct. Consequently, regardless of the actual constitutionality of Swanson’s decision not to let Morgan distribute his religious material, I cannot conclude that “every reasonable official” would have deemed the decision to be a violation of a constitutional right. Cf. Ashcroft v. al-Kidd, 563 U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (citation and internal quotation marks omitted). Accordingly, I concur in affirming the dismissal.

. Id; see also Greer v. Spock, 424 U.S. 828, 839-40, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (upholding regulation banning the distribution of literature on military base without prior consent of commander, as such a restriction helps maintain the "politically neutral” nature of the establishment).

. See Fleming v. Jefferson Cnty. Sch. Dist. R-1, 298 F.3d 918, 928 (10th Cir.2002) (holding that the Constitution "does not require educators’ restrictions on school-sponsored speech to be viewpoint neutral”); accord Ward v. Hickey, 996 F.2d 448, 454 (1st Cir.1993).

. Busch v. Marple Newtown Sch. Dist., 567 F.3d 89, 97 (3d Cir.2009).