**Virginia A. CURRY, Individually and as class representative, Plaintiff-Appellant,**

v.

**A.H. ROBINS COMPANY, and Ray Ravenholt, Individually and in his official capacity as Head of the Office of Population of the U.S. Agency for International Development, and Unknown Defendants, Defendants-Appellees.**

No. 83–2759.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1985.

Decided Oct. 21, 1985.

Andrew B. Spiegel, Law Office of Andrew B. Spiegel, Chicago, Ill., for plaintiff-appellant.

Anne Marie Whittemore, Asst. U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and PECK, Senior District Judge.*

COFFEY, Circuit Judge.

Plaintiff, Virginia A. Curry, appeals from an order of the district court granting the defendant A.H. Robins' ("Robins") motion to dismiss Counts I and II of Curry's complaint as being barred by the appropriate statutes of limitations and Robins' motion to recover the costs and attorneys' fees incurred by Robins in its defense of Count III of Curry's complaint, previously dismissed in the district court. We affirm.

I

According to Curry's complaint, a Dalkon Shield intrauterine device ("IUD") manufactured by Robins was inserted into Curry's body in June 1971 for the purpose of contraception. Curry alleges that when she was fitted with the device, she was told that the Dalkon Shield was a safe, effective means of birth control, that it was 99% effective in preventing pregnancy, that it was superior to other IUD's on the market, and that it was nearly as effective as the birth control pill with none of the adverse effects on the body associated with a birth control pill. While using the Dalkon Shield, Curry developed severe menstrual irregularity and increasing pain. By November 8, 1972, Curry's doctor was unable to locate the tail string of the IUD,[1] and after the development of additional physical problems, her doctor recommended that the device be removed. On April 9, 1974, Curry's doctor attempted to remove the IUD, but was unable to locate the tail string. Subsequent x-rays revealed that the device was located to the left of the midline mid-pelvic area. A dilation and curettage was performed on Curry on April 24, 1974 to remove the IUD, after which Curry experienced much bleeding and pain and suffered extreme mental and emotional distress. Curry alleged that she did not learn that Robins was potentially liable for her injuries until so informed by a co-worker in March of 1981.

Curry filed her complaint in this action almost two years thereafter on February 3, 1983. Counts I and II of Curry's complaint seek compensatory and punitive damages from Robins for the physical and emotional injuries caused by the Dalkon Shield. Count I alleged that Robins fraudulently misrepresented the safety of the Dalkon Shield before, during, and after Curry's experience with the device. Count II alleged that Robins is strictly liable to Curry because Robins willfully and intentionally breached its duty to insure the safety of Dalkon Shield customers and because the Dalkon Shield was marketed in an unreasonably dangerous condition, and also alleged that Robins breached expressed and implied warranties to Curry. Curry brought Count III individually and as representative of "a class comprised of women users of the Dalkon Shield in the United States and in certain 'third world' countries to which the Dalkon Shield was exported." Count III incorporated the allegations of Counts I and II and also alleged that Robins offered to sell unsterilized Dalkon Shields to the United States Agency for International Development ("AID") at great discount for use in third world countries, knowing that inadequate instructions

---

* The Honorable John W. Peck, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The IUD tail string apparently served no birth control function, but provided a means of withdrawal of the IUD from the uterus and a means of determining the general location of the IUD within the uterus.

would be included for the local medical practitioners who would insert the Dalkon Shields and knowing that Dalkon Shields used without adequate sterilization would create a health hazard. Curry also alleges that Ray Ravenholt, head of the Office of Population of AID, was primarily responsible for approving the purchase of Dalkon Shields from Robins. Curry alleges that the conduct of Robins and Ravenholt deprived Curry and her class of certain rights[2] which have been recognized and codified by the International Covenant on Civil and Political Rights and the International Covenant on Economic, Social and Cultural Rights, and for which the United States is obligated to promote respect pursuant to the United Nations Charter, the Helsinki Final Act of August 1975, and the Ninth and Fourteenth Amendments to the United States Constitution. Curry concluded that the conduct of Robins and Ravenholt was "in violation of 42 U.S.C. § 1983." Count III prays for the defendants to pay for the giving of proper notice of the risks and dangers inherent in the Dalkon Shield to all countries to which Dalkon Shields were exported, the establishment of a fund to compensate the medical, physical, and mental damages suffered and all costs, expenses, and attorneys' fees incurred in prosecuting Count III pursuant to 42 U.S.C. § 1988.

Robins moved to dismiss Count III on the grounds that the court lacked jurisdiction to award the requested relief, that Count III failed to state a cause of action under 42 U.S.C. § 1983, the Fourteenth Amendment, or any international charter or treaty, and that Curry lacked standing to assert Count III. Curry failed to file a response to Robins' memorandum in support of its motion to dismiss. The district court viewed Count III as based solely on 42 U.S.C. § 1983, and finding no allegation of state action as required by 42 U.S.C.

§ 1983, the district court granted Robins' motion to dismiss Count III, and on its own motion dismissed Count III with respect to Ravenholt as well. Robins filed a motion to dismiss Counts I and II on the grounds that they either failed to state a claim or were barred by the statute of limitations. Robins had included in its motion to dismiss Count III a prayer that it be awarded costs, including attorneys' fees, and Robins subsequently filed a separate motion to recover costs and attorneys' fees incurred in its defense of Count III. On August 11, 1983, the district court dismissed Counts I and II as being barred by the relevant statutes of limitations, concluding that the limitations period commenced at least by April of 1974 when Curry "discovered facts establishing a relationship between her medical problems and the IUD." The district court, relying on the Illinois statutes of limitations for personal injury, Ill.Rev.Stat. ch. 110, ¶ 13–202 (two years), and breach of warranty, Ill.Rev.Stat. ch. 26, ¶ 2–725 (four years), ruled that the limitations period had expired long before Curry filed her complaint in February of 1983. The district court also granted Robins' motion for costs and attorneys' fees, emphasizing that neither defendant had even arguably acted under color of state law as required by 42 U.S.C. § 1983. Accordingly, the district court concluded that Curry had reason to know that Count III failed to allege a cause of action under 42 U.S.C. § 1983 and was without foundation. This appeal followed.

## II

### A

■ Curry argues that the district court erred in determining that the statute of limitations barred Curry's claims in that the district court misapplied the Illinois discovery rule, misapplied the standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99,

2. Paragraph 61 of Curry's complaint reads, in part:

"Plaintiff and her class have certain inherent rights retained by them as human beings. These rights include, *inter alia,* the right to be free from medical or scientific experimenta-

tion without consent, the right to marry and found a family, the right to equal protection of the law, and the right to enjoyment of the highest attainable standard of physical and mental health."

2 L.Ed.2d 80 (1957), in failing to accept the truth of the factual allegations of Curry's complaint, and usurped a jury function by deciding a question of fact, namely, when Curry had knowledge that the cause of her injury was a defective product. The essence of Curry's argument is that the Illinois discovery rule is a subjective standard, requiring that the plaintiff have actual knowledge of the specific origin of her injuries and the identity of the responsible party or parties before the limitations period commences. According to Curry, the district court could not properly conclude, on the basis of the facts alleged in her complaint, that she had actual knowledge of the link between Robins' conduct, the Dalkon Shield and her injuries until May of 1981 when a co-worker informed Curry that she may have had a cause of action against Robins.

The Illinois discovery rule as interpreted by the Illinois Supreme Court is that: "The statute [of limitations] starts to run when a person knows or reasonably should know of [her] injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981). *See also Nolan v. Johns-Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656, 666 (1969); *Martinez v. Rosenzweig*, 70 Ill.App.3d 155, 26 Ill.Dec. 335, 340, 387 N.E.2d 1263, 1268 (1st Dist.1979); *Wigginton v. Reichold Chemicals, Inc.*, 133 Ill.App.2d 776, 274 N.E.2d 118, 121 (3rd Dist.1971). The discovery rule as enunciated does not require that a plaintiff have actual knowledge of the liability of the manufacturer of an allegedly defective product before the limitations period begins. Rather, once a plaintiff "reasonably should know that [an injury] was wrongfully caused," "the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell*, 52 Ill.Dec. at 11, 421 N.E.2d at 874.

Curry misinterprets the Illinois cases she relies upon to her own benefit to require actual knowledge of wrongful conduct before the limitations period commences. The Illinois Supreme Court, however, has not required actual knowledge to commence the limitations period. For example, in *Witherell*, the plaintiff began having physical problems shortly after beginning to take birth control pills. She was hospitalized for these physical problems in 1967 and 1972. In 1978, the plaintiff filed a complaint against her doctors and the manufacturer of the birth control pills alleging that she did not know the nature of her true condition until 1976. Nevertheless, the Illinois Supreme Court held the plaintiff's suit against the manufacturer to be barred by the applicable statute of limitations. In so holding, the court did not find the plaintiff's allegation concerning her actual knowledge to be dispositive. Instead the court stated, "it is ... inconceivable to us that a reasonable person would not have realized, at least by the time of plaintiff's second hospitalization in 1972," that someone might be legally responsible for her injuries. *Witherell*, 52 Ill.Dec. at 11, 421 N.E.2d at 874. Thus, to the Illinois Supreme Court the relevant inquiry was not when the plaintiff actually knew that her injury resulted from actionable conduct, but whether "a reasonable person would ... have realized" that fact. Similarly, the relevant inquiry before this court is not when Curry learned she had a cause of action against Robins, but whether a reasonable person would have realized in 1974 that the injuries, pain, and discomfort suffered by Curry might have been the result of actionable conduct. Curry conceded in her brief and in her argument before this court that "she was aware of the relationship between her medical problems and the IUD in April 1974." This concession by Curry, in light of the nature and extent of the physical problems she encountered leads us to conclude that it is "inconceivable ... that a reasonable person would not have realized," at least by April 1974, that Curry's physical problems may have been caused by the IUD and thus may have been the result of actionable conduct. The district court correctly determined that the

limitation period commenced in April 1974 and consequently expired long before her complaint was filed in February 1983.

Once we determine that the dispositive issue is when a reasonable person should have realized Robins' possible responsibility and possible liability, it becomes apparent that the district court correctly applied the standard of *Conley v. Gibson* when it evaluated Curry's complaint. *Conley* requires that a court not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim. 355 U.S. 41, 45–46, 78 S.Ct. at 101–02 (1957); *Zapp v. United Transportation Union*, 727 F.2d 617, 627 (7th Cir.1984). In applying the *Conley* standard, "the well pleaded allegations of the complaint are to be taken as true." *Zapp*, 727 F.2d at 627 n. 15. Curry contends that the district court failed to accept as true her allegation that she did not discover she had been injured by a defective product and that Robins was responsible for those injuries until March of 1981. This allegation, while relevant to Curry's actual knowledge, is totally irrelevant to the determination of when a reasonable person should have known of Robins' potential responsibility. Thus, we can accept Curry's allegation regarding her actual knowledge as true, and still properly conclude in light of the remaining allegations, which also must be taken as true, that Curry is unable to establish any set of facts to bring her claim within the statute of limitations.

■ Curry also contends that the issue of when Curry obtained sufficient knowledge to commence the limitations period is for the jury, not the court. According to Curry, the district court usurped a jury function by deciding that the limitations period commenced in April 1974 and as a result denied Curry her Seventh Amendment right to trial by jury. Curry's contention overlooks the explicit language of the Illinois Supreme Court:

"In many, if not most, cases the time at which an injured party knows or reasonably should have known both of [her]

injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact.... *Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court.*"

*Witherell*, 52 Ill.Dec. at 11, 421 N.E.2d at 874 (emphasis added). In the case before us, the facts are undisputed—they are provided solely by the allegations of Curry's complaint. The complaint alleges that Curry developed severe menstrual irregularity and increasing amounts of pain and discomfort while using the Dalkon Shield; that her doctor was unable to locate the Dalkon Shield; that a dilation and curettage was necessary to remove the device; and that she experienced much bleeding and pain following the removal of the Dalkon Shield. Moreover, Curry admitted in her brief and in oral argument that she was aware of the relationship between her medical problems and the IUD in April 1974. Based upon these undisputed facts, it is apparent that the district court acted well within its authority when it determined that the limitations period for Curry's claim commenced no later than April 1974.

### B

Curry also urges that because of Robins' allegedly fraudulent conduct in misrepresenting the safety of the Dalkon Shield and its failure to disclose certain side effects of the Dalkon Shield, Robins cannot rely on the statute of limitations to bar Curry's claims. Curry suggests two separate grounds for precluding Robins' reliance on the statute of limitations: Section 22 of the Illinois Limitations Act, Ill.Rev.Stat. ch. 83, § 23 (currently codified at Ill.Rev.Stat. ch. 110, ¶ 13–215), and the principles of equitable estoppel.

■ The Illinois appellate court succinctly explained the requirements of Section 22 of the Limitations Act in *Zagar v. Health and Hospitals Governing Commission of Cook County*, 83 Ill.App.3d 894, 39 Ill.Dec. 112, 404 N.E.2d 496 (1st Dist.1980):

"The concealment contemplated by this section must consist of affirmative acts

or representations which are calculated to, and in fact do, prevent the discovery of the cause of action; mere silence of the defendant and failure by the plaintiff to learn of the cause are not sufficient.... Even where this standard is met, section 22 does not apply if the party affected by the fraud might, with ordinary diligence, have discovered it.... [F]raudulent misrepresentations which form the basis of a cause of action do not constitute fraudulent concealment under that section in the absence of a showing that they tended to conceal the cause of action."

39 Ill.Dec. at 116, 404 N.E.2d at 500. Curry has failed to allege any affirmative act of misrepresentation or concealment on the part of Robins other than allegedly inducing Curry to choose the Dalkon Shield as a means of contraception by misrepresenting the safety of the Dalkon Shield. Thus, the complaint contains no allegations of conduct by Robins after Curry discovered her injuries were related to the Dalkon Shield which would have impeded Curry's filing a lawsuit against Robins. In effect, Curry contends that Robins covered up certain known side effects of the Dalkon Shield by failing to disclose information which was within its knowledge. The law is clear, however, that "mere silence of the defendant and failure by the plaintiff to learn of the cause are not sufficient" to constitute fraudulent concealment. *Zagar*, 39 Ill.Dec. at 118, 404 N.E.2d at 500. Or as the Ninth Circuit aptly stated:

> "Failure of the [defendant] to ascertain and publish the fact of [liability] is hardly sufficient to constitute fraudulent concealment."

*Davis v. United States*, 642 F.2d 328, 332 (9th Cir.1981), *cert. denied*, 455 U.S. 919,

102 S.Ct. 1273, 71 L.Ed.2d 459 (1982) (discussing discovery rule in context of federal statute of limitations).

The only possible way that the alleged misrepresentation concerning the Dalkon Shield could be considered fraudulent concealment would be if those misrepresentations tended to conceal that cause of action. However, even if Curry had initially relied on affirmative misrepresentations made by Robins, she could not reasonably have been misled by Robins' concealment after the time she recognized the relationship between the Dalkon Shield and her injuries. *See Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1374 n. 6 (9th Cir.1985) (discussing *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363 (5th Cir.1984), and *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983) two cases in which Robins was allowed to assert a statute of limitations defense). Finally, even if Robins' conduct can in some manner be construed as concealing the existence of Curry's cause of action, we are convinced that she has failed to satisfy another requirement of Section 22 of the Limitations Act, as delineated in *Zagar*, in that, according to the facts alleged, Curry would have discovered the existence of her cause of action against Robins with the exercise of ordinary diligence.[3] Consequently, we conclude that Section 22 of the Illinois Limitations Act, Ill.Rev.Stat. ch. 83, § 23 does not toll the statute of limitations for Curry's claims against Robins.

The doctrine of equitable estoppel is based upon the principle "that no man may take advantage of his own wrong." *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 761, 3 L.Ed.2d 770 (1959). Thus, "[i]f the defendant made a misrepresentation of a material

---

**3.** Curry's conduct is notable only for her lack of diligence. Curry's complaint alleges no action taken by Curry in pursuit of her legal rights between the time of her injury in 1974 and 1981 when an acquaintance casually informed Curry of Robins' possible liability. In light of the allegation in paragraph 58 of Curry's complaint that some time in 1974 the FDA conducted hearings concerning the dangers of the Dalkon Shield which resulted in the conclusion that the

Dalkon Shield was too dangerous for domestic use and Robins' suspension of domestic sales of the Dalkon Shield, it appears to this court that had Curry exercised even minimal diligence following her injury she would have discovered that there were serious questions concerning the medical safety of the Dalkon Shield, which should have alerted her to Robins' potential liability.

fact for the purpose of inducing a plaintiff to delay suit ..., it is estopped to plead the statute of limitations ..., provided the plaintiff has acted in justifiable reliance upon the misrepresentation." *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 31 (6th Cir. 1979). As we concluded in our discussion of Section 22 of the Illinois Limitations Act, Curry has failed to allege any misrepresentation made for the purpose of inducing Curry to delay commencing her suit. Additionally, Curry has failed to satisfy a second prerequisite to the invocation of the equitable estoppel principle—justifiable reliance. As this court stated in *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir.1978), to invoke the doctrine of equitable estoppel, it "is necessary ... that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit." As noted above, Curry could not reasonably have been misled by Robins' alleged concealment once she became aware of the relationship between her injuries and the Dalkon Shield. *See Allen*, 752 F.2d at 1374 n. 6. Since Curry could not have reasonably relied on Robins' alleged conduct or statements, we conclude that equity does not require that Robins be estopped from raising the statute of limitations defense to bar Curry's claims.

### III

Curry asserts that the district court's award of costs and attorneys' fees to Robins for its successful defense of Count III was in error. According to Curry, the district court mistakenly construed Count III as being premised solely upon 42 U.S.C. § 1983. In fact, Curry contends, Count III was "an attempt ... to sue directly under the Constitution for rights secured to her through the Ninth and Fourteenth Amendments," and when properly considered as such was not without foundation or frivolous.

■ The Civil Rights Attorneys' Fees Awards Act provides:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, ... or title VI of the Civil Rights Act of 1964, the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

42 U.S.C. § 1988. " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). A different standard is applied to determine when a defendant is a prevailing party for purposes of § 1988. A defendant "may be considered a prevailing party under section 1988 if plaintiff's action was 'vexatious, frivolous, or brought to harass or embarrass the defendant,' " *Hill v. Longini*, 767 F.2d 332, 335 (7th Cir.1985) (quoting *Hensley*, 461 U.S. at 429 n. 2, 103 S.Ct. at 1937 n. 2), or if the plaintiff's action is "meritless in the sense that it is groundless or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); *Werch v. City of Berlin*, 673 F.2d 192, 195 (7th Cir.1983). We further note that "[a]ttorneys' fee awards under 42 U.S.C. § 1988 rests within the sound discretion of the trial court," *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982), and "[t]his court will not disturb an award of attorneys' fees under [§ 1988] unless the district court abused its discretion." *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 368 (9th Cir.1981).

■ In the case at bar, the district court concluded that Count III was based on a violation of 42 U.S.C. § 1983 and that Curry failed to allege any conduct on the part of the defendants even arguably under color of state law as required by 42 U.S.C. § 1983. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1191 (7th Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 2700, 86 L.Ed.2d 716 (1985); *Lucas v. Wisconsin Electric Power Co.*, 466 F.2d 638, 646 (7th Cir.1972), *cert. denied*, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973). Since Curry had reason to know that her Count III did not state a cause of

action under § 1983, the district court found that Count III was without foundation and granted Robins' motion for costs and fees arising from its successful defense of Count III. On appeal, Curry contends that § 1983 was not the basis of the plaintiff's claim, but was pleaded in addition to her attempt to sue directly under the Ninth and Fourteenth Amendments. Curry does not contest the district court's determination that Count III fails to raise a colorable § 1983 claim. Instead, Curry contends that since the constitutional claim in Count III was not frivolous, and since the district court ignored the constitutional claim when it dismissed Count III, it is improper to award attorney's fees to Robins.

We do not accept Curry's belated attempt to characterize Count III as being primarily based directly on the Constitution, with § 1983 cited only "in addition to the other laws set forth in that count." The following evidence in the record leads us to conclude that when Curry's complaint was filed, Count III was based primarily, if not solely, on 42 U.S.C. § 1983. First, Curry requested an award of attorneys' fees for her prosecution of Count III, and as authority for her request relied on 42 U.S.C. § 1988, which by its language provides for such an award only in an "action brought to enforce a provision of section 1981, 1982, 1983, 1985 and 1986 of ... Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964." In contrast, Curry provided no authority for an award of attorneys' fees for prevailing on a claim brought directly under the Constitution. Thus, Curry apparently included a § 1983 claim in her complaint, at least in part, in an attempt to claim attorneys' fees under § 1988. Second, § 1983 is the only provision of the Constitution, laws, or treaties of the United States which Curry alleged was

violated: "Such conduct [of Robins and Ravenholt] is a violation of 42 U.S.C. § 1983.-" [4] Third, the civil cover sheet filed by Curry, which was completed and signed by Curry's counsel, describes her cause of action as "[p]roducts liability [Count II], fraud [Count I] and civil rights under 42 U.S.C. § 1983 [Count III]." No mention is made of any cause of action arising directly under the Constitution. Fourth and finally, Curry failed to respond to Robins' memorandum in support of its motion to dismiss Count III, and argued to the Court that Count III alleged a Constitutional claim for the first time after Robins filed its motion seeking costs and attorneys' fees.

We need not determine whether Curry attempted in fact to allege a claim directly under the Constitution or whether such a claim, if alleged, would be frivolous. It is abundantly clear from the record that in addition to whatever constitutional claims Curry contends are included in Count III, Curry attempted to assert a cause of action under 42 U.S.C. § 1983. The district court found that the § 1983 cause of action was without foundation, and Curry does not dispute that finding.

The fact that other claims have been raised in Count III, which the district court did not address on the merits and which might not properly be characterized as frivolous, does not require this court to reverse the district court's award of attorneys' fees. "[T]o be a prevailing party under § 1988, a party 'need not prevail on all issues if a significant one is resolved' in its favor." *Lotz Realty Co. v. United States Dept. of Housing and Urban Development*, 717 F.2d 929, 931 (4th Cir.1983) (quoting *Bonnes v. Long*, 599 F.2d 1316, 1318 (4th Cir.1979)). *See also Hanrahan v. Hampton*, 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980);

---

**4.** We are outraged at the audacity of the plaintiff's counsel, who, at oral argument before this court, denied that Count III raised a section 1983 claim:

"THE COURT: Why did you base this other claim on section 1983 ...?
COUNSEL: Your Honor it was—it was section 1988 that was cited in Count III for attorney's fees.

THE COURT: Didn't you cite 1983 in the complaint?
COUNSEL: I don't believe so.
THE COURT: I thought you did.
COUNSEL: Uh ... in any event, it was an attempt to sue directly under the Constitution."

*Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). As framed by Curry's complaint, Robins' liability under 42 U.S.C. § 1983 was a significant issue. The district court correctly concluded that as to that issue, Robins was the prevailing party for purposes of 42 U.S.C. § 1988, as defined by the Supreme Court in *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Furthermore, there is no evidence in the record that the district court abused its discretion in awarding Robins costs and attorneys' fees for its defense of the § 1983 claim raised in Count III.

IV

The decision of the district court is AFFIRMED.