BYBEE, Circuit Judge,
concurring in the judgment in part, but mostly dissenting:
In Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055 (9th Cir.2006), we held that *981 “attorney’s fees may be awarded to a defendant in a [civil rights] action when frivolous claims are joined with claims that are not frivolous.” Id. at 1063. What we gave in Tutor-Saliba, we take away today. The majority holds that civil rights cases trigger an additional level of scrutiny of defendant’s claims to attorney’s fees — scrutiny beyond requiring them to prove that the plaintiffs claims were “frivolous, unreasonable, or without foundation.” Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Relying entirely upon its own conception of “civil rights policy,” the majority fabricates a new rule: “In a civil rights case, such as this one, the pro-rata allocation of general fees ... is impermissible.” Maj. Op. at 971; see also id. at 1098. Henceforth, a defendant may not recover attorney’s fees unless it can prove that “fees would not have been [incurred] but for the inclusion of non frivolous claims.” Id. at 1097 (emphasis added). The majority has so whittled away at defendants’ right to receive attorney’s fees that defendants should reconsider whether any recovery is possible. See Maj. Op. at 972 (“the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry”). I disagree with this double bonus to civil rights plaintiffs because it is extralegal and counterproductive, not only for reasons that “go to the heart of our civil rights policy,” id., but for reasons that go to the heart of the administration of justice.
The majority joins the short side of an existing circuit split that is currently before the Supreme Court. The First, Fifth, Seventh, and Eleventh Circuits have held that defendants in civil rights cases may recover attorney’s fees even when the plaintiffs frivolous claims are intertwined with nonfrivolous claims. See Ward v. Hickey, 996 F.2d 448 (1st Cir.1993); Fox v. Vice, 594 F.3d 423 (5th Cir.2010), cert. granted, — U.S. -, 131 S.Ct. 505, 178 L.Ed.2d 369 (2010); Curry v. A.H. Robins Co., 775 F.2d 212 (7th Cir.1985); Quintana v. Jenne, 414 F.3d 1306 (11th Cir.2005); Head v. Medford, 62 F.3d 351 (11th Cir.1995). The one clear outlier is the Sixth Circuit, which has adopted a rule that a prevailing defendant may not recover attorney’s fees if the plaintiff has raised even one nonfrivolous claim. See Balmer v. HCA, Inc., 423 F.3d 606, 616-17 (6th Cir.2005). The majority does not agree outright with any of these circuits — thus enabling the split — but its position is closest to the Sixth Circuit’s plainly unreasonable rule. We can anticipate further guidance from the Court when it decides Fox, a case in which it recently granted a writ of certiorari.[1]
Although, as I explain, I concur in the judgment in part, I respectfully disagree with the majority’s reasoning and the bulk of its judgment.
I
Vernon Harris held an at-will position as an Initial Appearance Hearing Officer (or Commissioner) with Maricopa County Superior Court. Within five months of his appointment, Harris was under investigation for complaints that he had engaged in inappropriate conduct toward female staff *982 and using court staff for his personal correspondence. After the Superior Court determined that Harris had violated the canons of judicial ethics and engaged in unprofessional conduct, the Superior Court gave him the option of resigning or being fired. He resigned.
Harris then brought suit against the Superior Court, the Arizona Supreme Court, and Maricopa County (collectively, “Maricopa County”). He accused the defendants of various forms of breach of contract, wrongful termination, infliction of emotional distress, violation of privacy, race discrimination, and hostile work environment based on race or gender. All ten of his claims were eventually dismissed, we affirmed that judgment, and the defendants sought attorney’s fees under Arizona and U.S. law. The defendants sought roughly $316,000 in fees with almost $54,000 in costs. The district court awarded attorney’s fees under Arizona law for two and a half claims based on contract. Of the remaining seven and a half civil rights claims, the district court found that all were non-meritorious, but only four were frivolous. Faithfully following Christiansburg, the district court held that Maricopa County could only recover fees on Harris’s frivolous claims. The court reduced the fees requested by the County by apportioning time between the compensable and non-compensable claims. In an exercise of its equitable discretion, the district court further decided that it would not award fees for a frivolous disparate impact claim because it was sufficiently related to disparate treatment and retaliation claims, which, although not meritorious, were not frivolous. Using the lodestar method, the court calculated the fees, with various adjustments, at about $171,000. The court declined to enhance the lodestar and then reduced the lodestar by roughly 50 percent because of the plaintiffs financial hardship, although finding that “some award of attorney’s fees is necessary to serve as a deterrent, or to ensure that future defendants and the courts are not saddled with frivolous and unsuccessful claims.” Ultimately, the court awarded the defendants $85,500 in attorney’s fees and $40,150.53 in costs. The attorney’s fees represent about 27 percent of the fees requested.
II
The majority opinion errs in multiple ways, but in this way first: it flatly misstates the standard of review and then applies the wrong standard all the way down. We have long held that we review the district court’s determination of attorney’s fees for abuse of discretion. See Tutor-Saliba Corp., 452 F.3d at 1059. This standard applies to all aspects of our review, including review of the district court’s decision to award fees under Arizona state law, Chevron U.S.A. Inc. v. Schirmer, 11 F.3d 1473, 1480 (9th Cir.1993); the district court’s decision that particular claims are “groundless” or “unreasonable” under state law, Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir.2002); the district court’s decision to award fees under § 1988, Benton v. Oregon Student Assistance Com’n, 421 F.3d 901, 904 (9th Cir.2005); the district court’s decision that constitutional claims are frivolous, Tutor-Saliba Corp., 452 F.3d at 1061; the district court’s decision to award fees for the preparation of the motion for attorney’s fees, McGrath v. County of Nevada, 67 F.3d 248, 253 (9th Cir.1995); and the district court’s decision concerning the manner in which to calculate the awarded fees, Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Cairns, 292 F.3d at 1156-57.
*983 Despite our clear precedent, the majority is unwilling to give way to the district court on anything: “[t]he principal issues in this case are legal in nature and therefore reviewed de novo.” Maj. Op. at 970. The majority apparently derives this de novo standard of review from what has become boiler-plate language in attorney’s fees opinions: “Elements of legal analysis and statutory interpretation that figure into the district court’s attorney’s fees decision are reviewable de novo.” Tutor-Saliba Corp., 452 F.3d at 1059, quoting Richard S. v. Department of Developmental Services of State of California, 317 F.3d 1080, 1086 (9th Cir.2003), citing Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir.2000), citing Corder v. Gates, 104 F.3d 247, 249 (9th Cir.1996), quoting Kilgour v. City of Pasadena, 53 F.3d 1007, 1010 (9th Cir.1995), quoting Cabrales v. County of Los Angeles, 935 F.2d 1050, 1051 (9th Cir.1991), quoting Hall v. Bolger, 768 F.2d 1148, 1150 (9th Cir.1985). We have never cited the boilerplate as a standalone standard of review in attorney’s fees cases.
Rather, de novo review is the standard for a narrow range of legal issues that help define the scope of the district court’s discretion. As the Supreme Court explained the standard: the district court “necessarily has discretion in making” the determination about how to calculate the attorneys’ fee award, but that this discretion “must be exercised in light of the considerations we have identified.” Hensley, 461 U.S. at 437, 103 S.Ct. 1933. Our cases demonstrate that we have reviewed certain issues in fee awards de novo when they relate to some “element[ ] of legal analysis.” Cabrales, 935 F.2d at 1052 (reviewing the district court’s denial of fees based on its decision that it was legally precluded from awarding fees); see also, e.g., Hall, 768 F.2d at 1150, 1151 (reviewing the district court’s holding that sovereign immunity did not preclude it from awarding interest on attorney’s fees).
Whatever these “elements” may be, it is clear that the method of fee calculation is not such an element and that the proper standard of review is for abuse of discretion. See Hensley, 461 U.S. at 432, 103 S.Ct. 1933; Cairns, 292 F.3d at 1156-57.
Ill
The majority establishes a new rule for prevailing defendants who seek attorney’s fees in cases in which at least one claim is based on the civil rights laws. I have two objections. First, I generally object to the majority, in effect, double counting the burden successful defendants must bear. Second, I specifically object to the “but for” test the majority creates.
A
I disagree that prevailing defendants’ ability to recoup attorney’s fees in civil rights cases should be burdened beyond that called for by existing case law. Section 1988 itself does not distinguish between the right of prevailing plaintiffs and that of prevailing defendants to recover attorney’s fees. 42 U.S.C. § 1988(b) (“In any action or proceeding to enforce [civil rights laws], the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee”) (emphasis added). For pro-civil rights policy reasons, the Supreme Court later restricted prevailing defendants ’ access to attorney’s fees, allowing them only for the defense of “frivolous, unreasonable, or ... foundation[less]” claims. Christiansburg, 434 U.S. at 421, 98 S.Ct. 694. Thus, “expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus undercutting the efforts of Congress to promote the vigorous enforcement of the civil rights laws,” Maj. Op. at 971 (internal *984 quotations omitted), after Christiansburg, defendants unlike plaintiffs — can only recover their attorneys costs in exceptional circumstances, for frivolous claims.
Once defendants have shouldered the extraordinary burden of demonstrating that plaintiffs’ claims were not just merit-less, but frivolous, they are entitled to attorney’s fees on the same basis as everyone else. There is no justification in § 1988 for imposing a double burden on defendants. And we should not apply the Supreme Court’s policy considerations where it has not, including to our review of the manner in which district courts allocate fees. When we do so, we hamper the district court’s ability to make equitable decisions to accommodate the on-the-ground realities of litigation with which we are much less familiar. In addition, we risk rewarding plaintiffs for raising groundless and frivolous litigation against cash-strapped defendants like Maricopa County, who must then spend their limited funds defending against unreasonable claims. We risk straining the capacities of defendants to prevent and redress real civil rights grievances. Even our own policy interests are not served by hindering the district court’s ability to require plaintiffs like Harris to bear the costs of clogging our courts with groundless and frivolous litigation. See Munson v. Milwaukee Bd. of Sch. Directors, 969 F.2d 266, 269 (7th Cir.1992) (“[W]hen a civil rights suit is lacking in any legal or factual basis ..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation.”) (alterations in original) (citations omitted). Finally, the majority’s decision diminishes legitimate civil rights claims by suggesting that we cannot even distinguish between nonfrivolous and outright frivolous claims and that anyone filing a civil rights claim may play by a different set of rules from everyone else.
Our decision here conflicts with the decisions of at least four other circuits. Although these cases have acknowledged that the difficulty of calculating attorneys’ fee awards in cases in which frivolous and nonfrivolous civil rights claims are intertwined, they concluded that defendants are not precluded from receiving an award. Accordingly, the First, Fifth, Seventh, and Eleventh Circuits have held that prevailing defendants must be allowed to recoup the cost of defending against frivolous civil rights claims, even if those claims are interrelated with nonfrivolous ones.
In Ward, 996 F.2d 448, the First Circuit expressly held that the interrelatedness of frivolous and nonfrivolous claims may not be used as a reason to deny attorney’s fees to prevailing plaintiffs in civil rights cases. Id. at 455. The circuit court reversed the district court’s denial of attorney’s fees because of the lower court’s “reliance on the interrelated claims doctrine,” a doctrine that enables a court to grant a fee award “includ[ing] fees for work performed on unsuccessful claims if that party’s unsuccessful claims are interrelated to the successful claims by a common core of facts or related legal theories.” Id. The First Circuit held that the district court had improperly relied on the doctrine, denying all fees to the prevailing defendants and allowing “frivolous civil rights claims [to] waste judicial resources that would otherwise be used for legitimate claims.” Id. The First Circuit concluded: “[A] district court should not deny fees for defending frivolous claims merely because calculation would be difficult.” Id. at 455-56. The circuit court remanded to the district court for recalculation. Id. at 456.
When presented with the question of an attorneys’ fee award for interrelated frivo *985 lous and nonfrivolous civil rights claims, the Fifth Circuit agreed with the First Circuit. In Fox v. Vice, 594 F.3d 423 (5th Cir.2010), cert. granted, — U.S. -, 131 S.Ct. 505, 178 L.Ed.2d 369 (2010), the Fifth Circuit held that “a defendant does not have to prevail over an entire suit in order to recover attorney’s fees for frivolous § 1983 claims” because requiring otherwise “would undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims without consequences merely because those claims were joined with additional non-frivolous claims.” Id. at 428 (quoting Tutor-Saliba Corp., 452 F.3d at 1064 (quoting Quintana, 414 F.3d at 1312)) (internal quotation marks omitted). Quoting from our opinion in TutorSaliba Corp., the Fifth Circuit noted, “[s]uch a rule would also make a defendant’s entitlement to attorney’s fees ‘depend not upon a district court’s review of the merits of a plaintiffs § 1983 claims, but upon how a plaintiff chose to draft his complaint.’ ” Id. at 428-29 (quoting Tutor-Saliba Corp., 452 F.3d at 1064).
The Seventh Circuit has adopted a similar position on fee awards for interrelated frivolous and nonfrivolous civil rights claims. In what may be the earliest circuit opinion on this issue, Curry, 775 F.2d 212, the Seventh Circuit affirmed a district court decision granting fees to prevailing defendants in a civil rights case, even though the claims for which the defendants merited fees were interrelated with other claims “which might not properly be characterized as frivolous.” Id. at 220. The Seventh Circuit reasoned that such fees were merited because “to be a prevailing party under § 1988, a party need not prevail on all issues if a significant one is resolved in its favor.” Id. (alteration, quotation marks, and citations omitted).
Likewise, the Eleventh Circuit has repeatedly held that prevailing defendants must be able to recover fees associated with the defense of frivolous civil rights claims, even if those claims are interrelated with nonfrivolous ones. See Quintana, 414 F.3d at 1312; Head, 62 F.3d 351. In Quintana, the Eleventh Circuit affirmed the district court’s decision to award fees for a claim of retaliation, which the court had found was frivolous, but reversed the district court’s decision to award fees for a claim of discrimination, which the court had found to be not frivolous. The Eleventh Circuit made clear, however, that it was not holding “that a civil rights defendant may receive attorney’s fees for an unsuccessful claim that is not frivolous” because “[s]uch a holding would frustrate the goal of Congress that the provisions of Title VII be enforced vigorously.” Quintana, 414 F.3d at 1312.[2] Rather, in Quintana, the Eleventh Circuit relied upon its own precedent in Head, which established that it was the province of the district court to “properly ... weigh and assess the amount of attorney’s fees realistically attributable solely and exclusively to the plaintiffs” frivolous claims. 62 F.3d at 356. Thus, in the Eleventh Circuit it is well established that although prevailing defendants may not recover the costs of *986 defending against nonfrivolous civil rights claims, they must recover the costs of defending against frivolous ones, which apportionment the district courts are equipped to make, even in cases in which the compensable claims are interrelated with non-compensable ones.
Each of these circuits — the First, Fifth, Seventh, and Eleventh — allow prevailing defendants to recover the costs of defending against frivolous civil rights claims under circumstances such as those presented to us today. In fact, so have we. See Tutor-Saliba Corp., 452 F.3d at 1064. In holding to the contrary, the majority has rejected our own precedent, as well as the reasoning of a majority of other circuits.[3]
Inasmuch as the majority opinion imposes an additional burden on prevailing defendants in civil rights cases — beyond that imposed by Chñstiansburg and in contravention of our precedent and the majority of circuits — I respectfully disagree.
B
Once prevailing defendants have carried their heavy burden of establishing that plaintiffs claims are frivolous, they should be entitled to attorney’s fees on the same basis as prevailing plaintiffs. The manner in which the district court awards fees to parties who are entitled to fees for some claims, but not other claims, is committed to the district court’s sound discretion. In general, a district court does not abuse its discretion when it makes a pro rata allocation of fees. The majority’s new “but for” rule has never been our rule.
In Cairns, 292 F.3d 1139, we held that a district court may make a pro rata allocation of general fees. We affirmed the district court’s decision to make two pro rata allocations: first, as between publicity and trademark claims, and second, as among the trademark claims. As to the first allocation, the district court found that because the right of publicity claim was held on interlocutory appeal while the trademark claims required full litigation, it was more appropriate to allocate one-quarter of the general fees to the publicity claim and three-quarters to the trademark claims. Id. at 1158. As to the second allocation, the district court found that because one of the three trademark claims was unreasonable and was therefore not recoverable, id. at 1156, it was appropriate to reduce the trademark claim fee allocation by about one-third, or thirty percent. Id. at 1156. The district court then reduced the award based on other equitable considerations. Id. at 1158-59.
In Cairns, we held that this divvying— including the district court’s decision to divide unspecified general fee money into two parts, because there were two categories of claims, and then to divide one of those halves into three parts, because there were three sub-claims — was not an abuse of the district court’s discretion to apportion fees on a claim-by-claim basis. Indeed, we “cautioned.... that ‘the impos *987 sibility of making an exact apportionment [between compensable and non-eompensable claims] does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment.’ ” Id. at 1157 (quoting Gracie v. Gracie, 217 F.3d 1060, 1070 (9th Cir.2000)). Relying expressly upon that affirmation, the district court here did what the Caims district court did — it used its discretion to divide pro rata the unspecified general fee money among the various claims, to “reflect an apportionment” as a starting point for further equitable accommodations. Id.
The majority opinion argues that Caims is not relevant — and is therefore not precedential — because Caims “was not a civil rights case, and thus did not implicate our longstanding policy of solicitude for civil rights plaintiffs, and our insistence that they be required to reimburse defendants only for fees incurred in defense against ‘exceptionally]’ unwarranted claims.” Maj. Op. at 973. This argument is smoke and mirrors. Although Caims was not a civil rights case, it was a Lanham Act case, which, like civil rights cases, allows prevailing defendants to be reimbursed for attorney’s fees only “in exceptional cases,” meaning cases that are “groundless, unreasonable, vexatious, or pursued in bad faith.” Cairns, 292 F.3d at 1156 (quoting Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 881 (9th Cir.1999) (quoting Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir.1997))). Though this language differs slightly from that applicable to civil rights cases — the Lanham Act affords fees for claims that are “groundless, unreasonable, vexatious, or pursued in bad faith,” id., where only claims that are “frivolous, unreasonable, or without foundation” can give rise to attorney’s fees for defendants in civil rights cases, Christiansburg, 434 U.S. at 421, 98 S.Ct. 694—the difference does not seem to be meaningful for purposes of distinguishing Caims from civil rights cases. In my view, Caims should control our discussion here.
We get into this discussion about Caims and the allocation of general fees, of course, because the defendants did not provide claim-specific documentation for all of their fees. Defendants do have a responsibility to “establish[] entitlement to an attorney’s fees’ award.” Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir.2000) (“The burden of establishing entitlement to an attorney’s fees award lies solely with the claimant.”) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (emphasis added)). But unlike the majority, who believes such a responsibility grows out of civil rights policy considerations and therefore may affect plaintiffs and defendants differently, I recognize that this burden is always imposed on the fee claimant, whether plaintiff or defendant.
Although this case may not require that we decide what a plaintiffs burden for documentation would be, see Maj. Op. at 972 n.l, the majority seizes this reprieve to impose an asymmetrical burden on defendants. It adopts an unprecedented, burdensome “but for” documentation rule: “Accordingly, a defendant must demonstrate that the work for which it asserts that it is entitled to fees would not have been performed but for the inclusion of the frivolous claims in the complaint.” Maj. Op. at 972 (emphasis added). The majority itself expressly acknowledges that, under its punishingly strict formulation of the principle, “the burden on the defendant ... is from a practical standpoint extremely difficult to carry.” Maj. Op. at 972. This heightened burden on defendants originates with the majority. It *988 does not grow out of the relevant statutory language or case law, neither of which indicate that — except for the Christians-burg exception to what kinds of claims merit fees for defendants — plaintiffs and defendants are to be treated differently in their application for fee awards. 42 U.S.C. § 1988; Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir.2000). For this reason, I disagree with the majority opinion insofar as it imposes a documentation burden on the defendants that would not be applied likewise to a prevailing plaintiff.
I recognize that awarding a party fees despite its failure to provide claim-specific documentation risks allowing that party to be reimbursed for non-compensable claims. But this is a problem that affects both plaintiffs and defendants within the civil rights context (and without). And, for that reason, as it is one with which district courts are repeatedly confronted, I would defer to the district court’s discretion to determine that the fees awarded in this case were an appropriate measure of the work done defending the compensable claims.
IV
After jerry-rigging the law and applying an unstatutory documentation rule against the prevailing defendants, the majority applies microscopic scrutiny to the district court’s decision. Although I disagree with the majority’s effort to nickel-and-dime to death defendants’ award, I do agree that two of the district court’s actions deserve remand. I present my claim-specific concerns and concurrences below. I address the contract claims first and then the civil rights claims.
A
Under Arizona law, ARS § 12-341.01(A), courts can award “reasonable attorney fees” to the prevailing party in a “contested action arising out of a contract.” Based on this state statute and the seven factors identified by the Arizona Supreme Court as being relevant to such a discretionary award, see Associated Indem. Corp. v. Warner, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985), the district court awarded the defendants attorney’s fees for two and a half claims it determined arose out of contract: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; and (3) the due process property interest half of count nine in Plaintiffs Amended Complaint. It found that the contract claims were frivolous because Harris did not have a contract. The due process claim was similarly infirm because Harris was an at-will employee and thus lacked a potential property interest in his employment.
The majority agrees that the contract claims are frivolous but vacates the award anyway. Maj. Op. at 975. It reasons that “under Arizona law it is impermissible to require a plaintiff to pay fees that a prevailing defendant incurred in whole or in part defending against nonfrivolous civil rights claims.” Maj. Op. at 972 (citing Sees v. KTUC, Inc., 148 Ariz. 366, 714 P.2d 859, 862 (1985)). The problem with this statement is that it is false. The majority has conflated its own, new civil rights attorney’s fees rule with Arizona’s contractual claims attorney’s fees rule. The Sees case deals with fees under ARS § 41-1481(J) and ARS § 12-341.01(C), neither of which are contract-related attorney’s fees provisions. Here, the Superior Court sought — -and the district court awarded— fees for contract-based claims under ARS § 12-341.01('A) (emphasis added), which was not at issue in Sees and was not there burdened with the civil rights policies at issue in Sees. Therefore, all of the majori *989 ty*s cites to Sees in its contract claims analysis are inapposite. In relying upon Sees, the majority has projected its own new civil rights rule onto Arizona contract law. There is no precedent in Arizona for the majority’s move.
The majority also vacates the due process claim award because the plaintiff may have referenced a “liberty interest in being free from defamation” in addition to his “property interest in continued employment.” Maj. Op. at 975 n.4. I say “may have” because the majority acknowledges that Harris did not contest the due process award “explicitly or clearly,” but decides to reach out for these issues anyway because the “issue is purely legal.” Id. Here, again, the majority misstates both the standard of review and the law. We are reviewing for abuse of discretion, and when the issue involves such questions as whether a claim is frivolous and whether the plaintiff even contested it, the issue is not “purely legal.” See Tutor-Saliba Corp., 452 F.3d at 1061; Cairns, 292 F.3d at 1156.
In any event, the majority ignores or fails to acknowledge that even Harris’s liberty interest due process claim required proof of an employment contract, or some other “right or status recognized by state law,” for it to be successful. As we made clear in Wenger v. Monroe, 282 F.3d 1068, 1074 (9th Cir.2002), “injury to reputation standing alone does not violate the Due Process Clause of the Fourteenth Amendment. ... Rather, due process protections apply only if a plaintiff is subjected to ‘stigma plus.’ ” Stigma plus requires that the allegedly defamatory statement have been “made in connection with the termination of employment or the alteration of some right or status recognized by state law.” Id. In other words, Harris needed both evidence of defamation and evidence that he was terminated or otherwise experienced an alteration in some “right or status recognized by law.” Here, Harris was not terminated; he resigned. Therefore, Harris must have been relying upon the “alteration of some right or status recognized by state law” language for his liberty interest due process claim. In this case, Harris could not identify what he was relying upon as a “right or status recognized by state law.” The majority doesn’t identify one either. For my part, I cannot think of what “right or status recognized by state law” the plaintiffs liberty interest due process claim would rest on, other than the alleged contract. Because the plaintiffs liberty interest due process claim must have relied upon his alleged right to employment, the district court did not abuse its discretion in lumping together the plaintiffs property and liberty interest due process claims, identifying them as being contract-based, and awarding fees for them under § 12-341.01(A). I would affirm the attorney’s fees awarded under ARS § 12-341.01CA).
B
With respect to the civil rights claims, I agree with the majority that the fee awards for the federal civil rights claims under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and ARS § 41-1481(J) can be construed under a common standard. See Hewitt v. Joyner, 940 F.2d 1561, 1572 (9th Cir.1991); Sees, 714 P.2d at 862. There are eight claims here: (1) hostile work environment; (2) race discrimination; (3) false light/invasion of privacy; (4) wrongful termination; (5) negligent and intentional infliction of emotional distress; (6) defamation; (7) equal protection[4]; and *990 (8) tortious interference with a business relationship. In addition, Maricopa County requested fees for the work required to file its motion for attorney’s fees. I will address each of these nine fee requests in turn.
1
I disagree that it was an abuse of discretion for the district court to divide Harris’s hostile work environment claim into two claims: one relating to his race and one relating to his gender. The majority transmogrifies these tort claims into a unified race-and-gender theory, for which it cites a 1932 Supreme Court case and a 1980 Fifth Circuit case — neither of which was ever cited by the plaintiff. Maj. Op. at 977-78 (citing Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and Jefferies v. Harris Co. Community Action Ass’n, 615 F.2d 1025, 1032 (5th Cir.1980)). The majority’s disagreement with the district court’s treatment of this claim is another example of the majority’s failure to remember its task: review for abuse of discretion the district court’s determination of the frivolousness of the plaintiffs claims. Ultimately our disagreement on this point is irrelevant, however, because the majority concedes that even as transmogrified, the plaintiffs claim was frivolous. As to the frivolousness of the claim, I agree, for the reasons offered by the district court.
I disagree, however, with the majority’s decision to vacate the hostile work environment fee award despite its agreement that the claim was frivolous. Here, the majority employs its novel “but for” award requirement, holding that because “[ajlmost every time entry in defendants’ fee petition for work related to the hostile work environment claim was also listed as related to some or all of Harris’s nonfrivolous discrimination claims,” the district court improperly awarded fees. Maj. Op. at 977. But the unfairness of the majority’s new rule is manifest here. Maricopa County has satisfied its heavy Christiansburg duty and shown that Harris’s claims are not only non-meritorious, but frivolous. That entitles it to attorney’s fees on the same basis as if it had been a prevailing civil rights plaintiff. The only remaining question is how to apportion the attorney’s fees, and as to that question, we had previously approved the method the district court employed. See Tutor-Saliba Corp., 452 F.3d at 1063-64; Cairns, 292 F.3d at 1157. It is only because the majority has created a new, nearly impossible hurdle for Maricopa County that it reverses the award. But under any fair reading of our prior law, the district court did exactly what it should have and there was no abuse of discretion.
2
Like the majority, I do not think it was an abuse of discretion for the district court not to award fees for the race discrimination claim.
3
I agree with the majority that whether a hearing officer is a public official was a novel question under Arizona state law and that, at the outset of the litigation, it was not clear from existing precedent that the plaintiff should have known he did not have an enforceable privacy interest. The majority is correct to point out that none of the case law relied upon by the district court as to this holding relates to low-level judicial officers; rather, it all relates to law enforcement officials. Although the district court’s reasoning about why a hearing officer is a limited purpose public figure may be sound, I agree with the majority that it was not frivolous for the plaintiff to claim that, as a hearing officer, *991 Harris was not a limited interest public figure where such a claim had never before been decided by a relevant court. I agree with the majority that the award for the false lighVinvasion of privacy claim should be vacated.
4
I agree with both the district court and the majority that the wrongful termination claim was frivolous for the reasons articulated by the district court. Unlike the majority, however, I would not direct the district court to change its methodology in calculating the wrongful-termination-related portion of the fee award. Maj. Op. at 978 (“Of course, the fees properly attributable to this claim ... would unquestionably be quite small.”). I am persuaded that, by its discussion of Cairns, the district court acknowledged the potential problem with awarding the same amount of fees for two claims that were litigated to different extents and properly exercised its discretion: “While the fees were not allocated equally between the claims in Cairns, the Court finds that Defendants’ equal allocation between Plaintiffs ten claims is appropriate in this case.” As Hensley makes clear, “the district court has discretion in determining the amount of a fee award,” which discretion “is appropriate in view of the district court’s superi- or understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.” 461 U.S. at 437, 103 S.Ct. 1933. Though the majority might have made a different decision, it was not an abuse of discretion for the district court to award equal fees to this as to the other fee-recoverable claims.
5
I disagree with the majority as to the negligent infliction of emotional distress claim, but I agree as to the intentional infliction of emotional distress claim.
With respect to the negligent infliction of emotional distress claim, the majority is wrong — the district court did not apply “an erroneous legal standard” by requiring that emotional distress “result in illness or bodily harm in order to recover for negligent infliction of emotional distress.” Maj. Op. at 978 (internal citations omitted). It is the majority that has misstated Arizona law. First, as the district court pointed out, Arizona has long required proof of illness or bodily harm. See Keck v. Jackson, 122 Ariz. 114, 593 P.2d 668, 669 (1979); Ball v. Prentice, 162 Ariz. 150, 781 P.2d 628, 630 n. 1 (1989). Second, the majority relies upon Monaco v. Health-Partners of Southern Arizona, 196 Ariz. 299, 303, 995 P.2d 735 (Ariz.App.1999), for the proposition that “ ‘substantial, long-term emotional disturbances’ unaccompanied by any physical injury” can give rise to an NIED claim. Maj. Op. at 978-79. The majority misreads Monaco. The plaintiff in Monaco suffered physical manifestations of his anxiety, including profound trouble sleeping, teeth grinding, and nightmares, and was diagnosed with post-traumatic stress disorder. Id. at 303, 995 P.2d 735. More importantly, Arizona eases subsequent to Monaco have required a showing of bodily harm for an NIED claim under Arizona state law, just as the district court said was required. See Loza v. American Heritage Life Ins. Co., 2010 WL 716322, at *6 (D.Ariz. Feb.25, 2010) (“To establish a claim for negligent infliction of emotional distress, [the plaintiff] must prove physical injury.”); State Farm Mutual Automobile Insurance Co. v. Connolly, 212 Ariz. 417, 423, 132 P.3d 1197 (Ariz.App.2006) (“[T]he plaintiff in a negligent infliction of emotional distress action must prove not just emotional distress, but a physical injury that results from the emotional distress”). As the district court *992 found in this case, the plaintiff only alleged “general claims of ‘severe emotional distress.’ ” These general and unsubstantiated allegations do not meet Arizona’s standard for a showing of emotional distress, and it was not an abuse of discretion for the district court to find the NIED claim frivolous and award fees.
With respect to the intentional infliction of emotional distress (“IIED”) claim, I agree with the majority that it was an abuse of discretion for the district court to find that the IIED claim was frivolous, but I disagree as to why. The district court found the IIED claim frivolous because “the Plaintiff knew or should have known that his IIED claim” was not sufficient as it was based solely on allegations, which “Arizona courts have typically found [are] alone not enough to constitute” an IIED. But, as the majority notes, the district court itself had ruled in an earlier part of the litigation that the alleged conduct could be “extreme and outrageous,” as is required for an IIED claim. Maj. Op. at 979. This casts doubt on the district court’s later determination that the claim was frivolous. Without an explanation of why it changed its position' — from holding that “Plaintiffs’ allegations regarding Defendants’ conduct, if true, may suffice for extreme and outrageous conduct” to holding that “Plaintiff knew or should have known that his IIED claim was frivolous”' — the district court’s fee determination reads like the kind of “post hoc reasoning” the Supreme Court cautioned against in Christiansburg, 434 U.S. at 421-22, 98 S.Ct. 694 (italics omitted). Therefore, although I agree with the majority that the IIED award should be vacated, I would remand with instructions that, if the district court wanted to reinstate the award for this claim, it should explain the apparent divergence in its holdings and why, its earlier holding notwithstanding, the plaintiffs claim was sufficiently frivolous as to merit attorney’s fees. See Hensley, 461 U.S. at 437, 103 S.Ct. 1933 (“It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award.”).
6-8
It was not an abuse of discretion for the district court to find that the defamation, equal protection, and tortious interference with a business relationship claims were not frivolous and did not merit fee awards. I agree with the majority that, as to these determinations, the district court’s decision should stand.
9
I strongly disagree with the majority’s decision to vacate the award for the defendants’ preparation of their motion for fees. Maricopa County is plainly a prevailing defendant, entitled to fees under Arizona and U.S. statutes and the Court’s opinion in Christiansburg. I would affirm the district court’s fee motion award in full.
C
The final money award at issue is the partial award of expenses to the defendants. Because ARS § 12-341.01(A) does not provide for expenses on the contract-based claims, and because the district court determined that 2.5 of the claims were contract-based, the district court did not award 25 percent of the defendants’ expenses. I agree with the majority that this decision to exclude expenses for the contract-based claims was supported by law and was. not an abuse of discretion. With respect to the expenses awarded, I believe the district court must make adjustments for the false light/invasion of privacy and intentional infliction of emotional distress, for reasons I have explained.
*993 I disagree with the majority’s decision to reverse the district court’s pro rata allocation based on the majority’s novel “but for” award rule. Because I disagree with the majority that the district court’s pro rata allocation is invalid, I also disagree with the majority that the district court’s pro rata allocation of expenses is invalid. I would find that the district court did not abuse its discretion by using a pro rata allocation of expenses, though, as discussed, it abused its discretion by awarding expenses to the defendants for work defending two claims that were not fee recoverable.
V
In sum, the majority makes two critical errors: First, it reviews the “principal issues” in this case under a de novo standard of review, when it should have reviewed all of the appealed issues for abuse of discretion; and second, it creates a new, nearly insurmountable hurdle for prevailing defendants to seek fees. Despite some agreement with the majority as to the claim-by-claim analysis — i.e., I would vacate the awards for the false light/invasion of privacy and IIED claims, remand the expenses award for recalculation — I vigorously dissent from the remainder of the judgment. I would thus affirm the judgment in large measure.

. The two issues presented in Fox are
1. Can defendants be awarded attorney’s fees under § 1988 in an action based on a dismissal of a claim, where the plaintiff has asserted other interrelated and nonfrivolous claims?
2. Is it improper to award defendants all of the attorney’s fees they incurred in an action under § 1988, where the fees were spent defending nonfrivolous claims that were intertwined with the frivolous claim?

. Based upon the Eleventh Circuit’s reasoning, on remand the district court conducted a pro rata calculation — "splitting] a majority of the billing entries in half because defense counsel spent an equal amount of time in defending against both Plaintiff's [nonfrivolous] claims (Counts I and II) and [frivolous] claims (Counts [III] and IV)” — which stood without appeal. Quintana v. Jenne, Report and Recommendation on Defendant’s Motion for Attorney's Fees and Additional Costs, 0:00-cv-07878, Doc. 138 at 2 (S.D.Fla. Dec. 29, 2005), adopted by 0:00-cv-07878, Doc. 139 (S.D.Fla. Jan. 27, 2006). I suggest that this sort of pro rata calculation was well within the district court's discretion in Quintana, as it is here.

. The only circuit holding to the contrary is the Sixth Circuit, and it bars such awards outright. Balmer v. HCA., Inc., 423 F.3d 606, 616-17 (6th Cir.2005) ("[I]n this circuit attorneys’ fees may not be awarded to defendants where the plaintiff has asserted at least one non-frivolous claim”). The Second Circuit’s rule is more ambiguous and may be specific to the case. See Colombrito v. Kelly, 764 F.2d 122, 132 (2d Cir.1985) ("Since the [§ 1983 and § 1985(3)] claims were closely intertwined and since the continuation of the § 1983 claim past discovery had only scant effect on the time and other resource costs of the litigation, the defendants would not be entitled to an award of fees even if the continuation of the § 1983 past discovery were frivolous.”). We noted Colombrito in TutorSaliba Corp. and rejected it in favor of the Eleventh Circuit’s reasoning in Quintana. See 452 F.3d at 1063-64.

. Although equal protection is listed here as one claim, it actually represents one half of count nine in Harris's First Amended Complaint.